Slip Op. 17-20

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SIGVARIS, INC.,**<br><br>   Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>   Defendant. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 11-00532 |

**OPINION**

[*Sua sponte* dismissing Plaintiff's claims concerning the classification of (1) certain models of graduated compression hosiery for which the court lacks subject matter jurisdiction, and (2) certain models of graduated compression arm-sleeves and gauntlets that were protested properly but Plaintiff has waived.]

Dated:February 28, 2017

John M. Peterson, Russell Andrew Semmel, and Elyssa R. Emsellem, Neville Peterson, LLP, of New York, N.Y., for Plaintiff Sigvaris, Inc.

Alexander J. Vanderweide, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States.  With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, and Amy M. Rubin, Assistant Director.  Of counsel on the brief was Beth C. Brotman, Attorney, Office of the Chief Counsel International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y.

   Choe-Groves, Judge:  Sigvaris, Inc. ("Plaintiff") filed a complaint pursuant to 28 U.S.C. § 1581(a) (2006)[1] claiming that U.S. Customs and Border Protection ("Customs") improperly denied its protests, which challenged Customs' classification of various models of graduated compression hosiery, arm-sleeves, and gauntlets.  See Summons, Dec. 22, 2011, ECF No. 1;

---

[1] Further citations to Title 28 of the U.S. Code are to the 2006 edition.

Compl., Mar. 30, 2012, ECF No. 6.  Plaintiff and Defendant subsequently filed cross-motions for summary judgment concerning the correct classification of several models of Plaintiff's imported compression products.  See Pl.'s Mot. Summ. J., Dec. 21, 2015, ECF No. 56; Def.'s Cross-Mot. Summ. J. 2, Mar. 10, 2016, ECF No. 61.  Before addressing the merits of the Parties' cross-motions for summary judgment, the court issues this opinion to address jurisdictional matters.  For the reasons set forth below, the court finds that it lacks subject matter jurisdiction to hear Plaintiff's claim for certain models of hosiery and that Plaintiff has waived its claim regarding certain models of arm-sleeves and gauntlets.  The court accordingly dismisses these claims *sua sponte.*  The court will render judgment on the cross-motions for summary judgment in a separate opinion, which will exclude those claims that the court dismisses here.

## BACKGROUND

Plaintiff imported 105 entries of graduated compression merchandise into the United States at the Port of Atlanta between September 2008 and November 2010.  See Summons; Statement of Material Facts as to Which no Genuine Issue Exists ¶ 2, Dec. 21, 2015, ECF No. 56-1 ("Pl. Facts"); Def.'s Resp. Pl.'s Statement of Material Facts as to Which No Genuine Issues Exists ¶ 2, Mar. 10, 2016, ECF No. 61 ("Def. Facts Resp.").  The entries imported by Plaintiff consist of graduated compression hosiery, arm-sleeves, and gauntlets.  See Def.'s Statement of Undisputed Material Facts ¶ 1, Mar. 10, 2016, ECF No. 61 ("Def. Facts"); see also Pl.'s Resp. Def.'s Statement of Undisputed Material Facts ¶ 1, June 1, 2016, ECF No. 66-1 ("Pl. Facts Resp.").  Each product is designed to apply a fixed range of graduated compression measured in millimeters of mercury ("mmHg").  See Def. Facts ¶ 3; Pl. Facts Resp. ¶ 3.

Plaintiff imported various models of its graduated compression products, each differing in style, material, length, and compression level. See Def. Facts ¶¶ 1–8; Pl. Facts Resp. ¶¶ 1–8. The graduated compression hosiery at issue includes models from the following product lines: 120 Support Therapy Sheer Fashion Series for women ("Series 120"),[2] 145 Support Therapy Classic Dress Series for women ("Series 145"), 180 Support Therapy Classic Ribbed Series for men ("Series 180"), 185 Support Therapy Classic Dress Series for men ("Series 185"), 400 Sports Performance Series ("Series 400"), 500 Medical Therapy Natural Rubber Series ("Series 500"), and 900 Medical Therapy Traditional Series ("Series 900"). Plaintiff's product catalogue indicates that Series 120, 145, 180, and 185 models exert 15–20 mmHg of compression, see Pl. Exs. Rule 56.3 Statement of Facts and Mem. Ex. A at 000029–30, 000035–36, Dec. 21, 2015, ECF No. 56-4 ("Ex. A"). Plaintiff alleges that Series 400, 500, and 900 models apply compression of 20 mmHg or greater. See Letter in Resp. to Information Requested 3–4, Nov. 8, 2016, ECF No. 75 ("Pl. Letter"). The graduated compression arm-sleeves and gauntlets involved in this matter include models from the 500 Medical Therapy Natural Rubber Series ("Series 500 arm-sleeves and gauntlets")[3] and 900 Medical Therapy Traditional Series ("Series 900 arm-sleeves and gauntlets").[4] Series 500 arm-sleeves and gauntlets exert 30–40 mmHg of

---

[2] Series 120 is available in the following varieties: 120P (pantyhose), 120M (maternity pantyhose), 120N (thigh-high hosiery), 120C (calf-length hosiery), and 120CO (calf-length hosiery with open toe). See Def. Facts ¶ 5.

[3] Series 500 arm-Sleeves and gauntlets are available in the following varieties: 503A (arm-sleeve without gauntlet), 503B (arm-sleeve with gauntlet), 503Gs2 (separate gauntlet), and 503GM2 (separate gauntlet). See Def. Facts ¶ 8.

[4] Series 900 arm-sleeves and gauntlets are available in the following varieties: 901B11 (arm-sleeve with gauntlet at 20–30 mmHg), 902B11 (arm-sleeve with gauntlet at 30–40 mmHg),

(footnote continued)

compression and Series 900 arm-sleeves and gauntlets are available in models with either 20–30 mmHg or 30–40 mmHg of compression. See Ex. A at 000025–26.

Customs classified and liquidated the graduated compression merchandise under various provisions of the Harmonized Tariff Schedule of the United States (2010) ("HTSUS") as follows: (1) the graduated compression hosiery at a duty rate of 14.6% ad valorem under HTSUS subheading 6115.10.40 or duty free under HTSUS subheading 6115.10.05; (2) the graduated compression arm-sleeves under HTSUS subheading 6307.90.98 dutiable at 7% ad valorem; and (3) the graduated compression gauntlets under HTSUS subheading 6116.93.88 dutiable at 18.6% ad valorem. See Pl. Facts ¶ 3; Def. Facts Resp. ¶ 3; see also Summons. Plaintiff filed nine protests that challenged Customs' classification of several models of graduated compression merchandise. See Protest Nos. 1704-10-100013, -10-100018, -10-100068, -10-100240, -10-100258, -11-100057, -11-100189, -11-100352, -11-100414. Plaintiff's protests sought, *inter alia*, to have Customs classify all of the merchandise duty free under HTSUS subheading 9817.00.96 as "[a]rticles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons," or alternatively to classify the compression hosiery as duty free under HTSUS subheading 6115.10.05 as "[s]urgical panty home [sic] and surgical stockings with graduated compression for orthopedic treatment." See, e.g., Protest No. 1704-10-100018. Plaintiff's protests were deemed denied on December 12, 2011.[5]

---

901A11 (arm-sleeve without gauntlet at 20–30 mmHg), 902A11 (arm-sleeve without gauntlet at 30–40 mmHg), and 902A11+size/S (arm-sleeve with grip-top at 30–40 mmHg). See Ex. A at 000026.

[5] By statute, "a protest which has not been allowed or denied in whole or in part within thirty

(footnote continued)

On December 22, 2011, Plaintiff commenced its action to contest the denial of its protests, invoking the court's jurisdiction under 28 U.S.C. § 1581(a).  See Summons.  Plaintiff's complaint alleged that Customs misclassified several models of graduated compression merchandise and improperly denied the protests.  See Compl. ¶¶ 32–66.  Plaintiff moved for summary judgment contending that certain models of graduated compression hosiery, arm-sleeves, and gauntlets were entitled to duty free treatment under HTSUS subheading 9817.00.96.  See Mem. Sigvaris, Inc., Supp. Pl.'s Mot. Summ. J. 3–21, Dec. 21, 2015, ECF No. 56-2 ("Pl. Br.").  The motion contended alternatively that models of compression hosiery applying compression of 20 mmHg or greater were classified under HTSUS subheading 6115.10.05 and not subject to duties.  See id. at 21–24.  Defendant filed a cross-motion for summary judgment arguing that the models of compression hosiery, arm-sleeves, and gauntlets were properly classified under HTSUS subheadings 6115.10.40, 6307.90.98, and 6116.93.88, respectively.  See Def.'s Mem. Supp. Cross-Mot. Summ. J. 5–21, Mar. 10, 2016, ECF No. 61 ("Def. Br.").

In a letter dated November 2, 2016, the court informed the Parties of potential jurisdictional issues that might prevent the court from ruling on the classification of certain models of graduated compression merchandise, namely Series 180 hosiery, models of hosiery that apply pressure of 20 mmHg or greater, and Series 900 arm-sleeves and gauntlets.  See Letter, Nov. 3, 2016, ECF No. 74.  The court questioned jurisdiction because the record before the court did not establish that Plaintiff protested Customs' classification of these specific

---

days following . . . a request for accelerated disposition shall be deemed denied on the thirtieth day following mailing of such request."  19 U.S.C. § 1515(b) (2006); see also 19 C.F.R. § 174.22 (2011).

models, which is a prerequisite to filing a classification lawsuit. See id. at 1–2. The court requested clarification of whether the entries included these models of graduated compression merchandise and whether Customs' classification of such models was properly protested. See id.

In response to the court's request, Plaintiff averred that the subject entries included the models in question and that the denied protests challenged Customs' classification of these products. See Pl. Letter 1–4. Plaintiff also stated that graduated compression hosiery with compression of 20 mmHg or greater refers to Series 400, 500, and 900 models of compression hosiery. See id. at 3–4. Defendant responded that 28 U.S.C. § 1581(a) does not provide the court with jurisdiction over these classification claims because, "[w]hile . . . the entries identified on the exhibits to Sigvaris's response to the Court's Letter contain series 180 compression hosiery, 900 series arm-sleeves, and hosiery products of greater than 20 mmHg of compression, Sigvaris never protested the classification of such product models." See Def.'s Resp. Court's Nov. 2, 2016 Letter 1–6, Nov. 10, 2016, ECF No. 78 ("Def. Resp."). Defendant noted that Plaintiff's complaint, responses to written discovery requests, and motion for summary judgment failed to articulate that the classification of these specific models were at dispute in the cross-motions for summary judgment. See id. at 6–13. Plaintiff rejected Defendant's assertions as "unfounded and erroneous" because Plaintiff purportedly filed valid protests that challenged Customs' classification of the merchandise and timely filed a summons to contest the denials of these protests. See Pl.'s Reply Def.'s Resp. Pursuant Court's Nov. 10, 2016 Letter 2–10, Nov. 14, 2016, ECF No. 80 ("Pl. Reply").

Court No. 11-00532                                                                                                          Page 7

## DISCUSSION

**A. Jurisdictional Framework**

The U.S. Court of International Trade, like all federal courts, is one of limited jurisdiction and is "presumed to be 'without jurisdiction' unless 'the contrary appears affirmatively from the record.'" DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) (quoting King Iron Bridge & Mfg. Co. v. Otoe Cty., 120 U.S. 225, 226 (1887)). The party invoking jurisdiction must "allege sufficient facts to establish the court's jurisdiction" independently for each claim asserted, id. at 1318–19 (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)), and therefore "bears the burden of establishing it." Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006). A court may and should raise the question of its jurisdiction *sua sponte* any time it appears in doubt. Arctic Corner, Inc. v. United States, 845 F.2d 999, 1000 (Fed. Cir. 1988) (citation omitted); see also USCIT R. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The U.S. Court of International Trade has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a). Jurisdiction under 28 U.S.C. § 1581(a) is conditioned upon the denial of a protest challenging a decision made by Customs that is filed in accordance with

Court No. 11-00532                                                                                    Page 8

Section 1514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514 (2006).[6]  The following

Customs decisions are protestable:

> [A]ny clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to--
>
>  (1) the appraised value of merchandise;
>  (2) the classification and rate and amount of duties chargeable;
>  (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
>  (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;
>  (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title;
>  (6) the refusal to pay a claim for drawback; or
>  (7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title.

19 U.S.C. § 1514(a).  A protest must satisfy statutory and regulatory requirements regarding

form and content.[7]  See 19 U.S.C. § 1514(c); 19 C.F.R. § 174.13(a).  Once a valid protest is filed,

---

[6] Further citations to the Tariff Act of 1930, as amended, are to the relevant provision under Title 19 of the U.S. Code, 2006 edition.

[7] According to 19 U.S.C. § 1514(c)(1),

> [a] protest must set forth distinctly and specifically--
>
> (A) each decision described in subsection (a) of this section as to which protest is made;
> (B) each category of merchandise affected by each decision set forth under paragraph (1);
> (C) the nature of each objection and the reasons therefore; and
> (D) any other matter required by the Secretary by regulation.

(footnote continued)

Customs must timely review the protest and determine whether to grant or deny the protest in whole or in part. 19 U.S.C. § 1515(a). If an importer does not avail itself of the protest process, the decision made by Customs "shall be final and conclusive upon all persons," 19 U.S.C. § 1514(a), and judicial review is statutorily precluded. See 28 U.S.C. § 1581(a); see also Hartford Fire Ins. Co. v. United States, 544 F.3d 1289, 1292 (Fed. Cir. 2008).

### B. Plaintiff's Protests Before Customs

Plaintiff contends that the court has jurisdiction pursuant to 28 U.S.C. § 1581(a) to rule on the classification of the imported models of compression products. See Compl. ¶ 2. The court has jurisdiction pursuant to § 1581(a) only over claims previously subject to protest.

Each of Plaintiff's protests included a completed protest form and an attached supporting memorandum of points and authorities.[8] See, e.g., Protest No. 1704-10-100018. Plaintiff provided the reasons for its protests as follows:

> Decision Protested: Classification of graduated compression hosiery under HTS subheading 6115.10. Classification of compression arm sleeves under HTS subheading 6307.90.9889. Classification of compression gauntlets under HTS subheading 6116.93.99. Assessment of duty on products pursuant to these subheadings.
> Protest Claim: The merchandise is properly classifiable under HTS subheading 9817.00.96 as articles specially designed for the use of the blind or physically

---

19 U.S.C. § 1514(c)(1). The implementing regulation further clarifies that a protest must include, among other requirements, "[a] specific description of the merchandise affected by the decision as to which protest is made" and "[t]he nature of, and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision, or refusal." 19 C.F.R. § 174.13(a)(5)–(6).

[8] Per regulation, "[a] written protest against a decision of CBP must be filed in quadruplicate on CBP Form 19 or a form of the same size clearly labeled 'Protest' and setting forth the same content in its entirety, in the same order, addressed to CBP. All schedules or other attachments to a protest (other than samples or similar exhibits) must also be filed in quadruplicate." 19 C.F.R. § 174.12(b).

> handicapped, entitled to duty free entry, or, alternatively under HTS subheading 6115.10.05, duty free.
> Reasons in Support of Protest: A *Memorandum of Points and Authorities* is attached.

See, e.g., id.[9] The protests indicated that the categories of merchandise subject to protest were graduated compression hosiery, arm-sleeves, and gauntlets.

Plaintiff attached a memorandum to supplement each of its protests. See, e.g., id. at Attach. Mem. P. & A. in Supp. Protest ("Suppl. Memo").[10] Each memorandum specified which models of graduated compression hosiery, arm-sleeves, and gauntlets were subject to protest. For hosiery, the memorandum specified that the goods at issue consisted of the following styles of graduated compression hosiery:

> SIGVARIS Support Therapy, Sheer Fashion graduated support pantyhose (**Model 120P**) n sizes A, B, C, D, E and F and in colors 00, 10, 12, 29, 33, 36, 41, 73 and 99;
>
> SIGVARIS Support Therapy, Sheer Fashion graduated support Maternity Panty hose (**Model 120M** in sizes A, B, C, D, E and in colors 33, 36, and 99;
>
> SIGVARIS Support Therapy, Sheer Fashion graduated support Thigh-High hosiery (**Model 120N**) in sizes A, B, C and in colors 00, 10, 12, 29, 33, 36, 41, 73, and 99;
>
> SIGVARIS Support Therapy, Sheer Fashion graduated support Calf-length hosiery (**Model 120C**) in sizes A, B, C and in colors 00, 10, 12, 29, 33, 36, 41, 73, and 99
>
> SIGVARIS Support Therapy, Sheer Fashion graduated support Calf length open toe hosiery (**Model 120CO**) in sizes A, B, C and in colors 29, 33 and 36.

---

[9] A number of Plaintiff's protests forms additionally protested Customs' classification of "cloth accessories for compression hosiery under HTS subheading 6117.90.9090" and "compression braces, garters under 6212.90.0030," see Protest Nos. 1704-11-100189, -11-100352, -11-100414, however, these products are not involved in this action.

[10] The memoranda attached to each of Plaintiff's protest are virtually identical. For ease of reference, the court will cite to the memorandum attached to Protest Number 1704-10-100018.

>   SIGVARIS Support Therapy, Classic Dress graduated support
>   sock for women (**145C**) in sizes A, B, C and in colors 00, 10, 12,
>   30 and 99;
>
>   SIGVARIS Support Therapy, Classic Dress graduated support
>   sock for men (**185C**) in sizes A, B, and C and colors 00, 10, 11, 12,
>   30, and 99.

See id. at 2–3 (emphases added).  The memorandum clarified that the protest involved models of graduated compression hosiery that exert between 15 and 20 mmHg of compression.  See id. at 1, 3, 5–6.  For arm-sleeves and gauntlets, the memorandum specified that the goods at issue consisted of the following eight styles of graduated compression arm-sleeves and gauntlets:

>   SIGVARIS Medical Therapy, Natural Rubber Armsleeve with
>   gauntlet (**503B**) in sizes S1, S2, M1, M2, L1 and L2 in color beige;
>
>   SIGVARIS Medical Therapy, Natural Rubber Armsleeve without
>   gauntlet (**503A**) in sizes S1, S2, M1, M2, L1 and L2 in color beige
>
>   SIGVARIS Medical Therapy, Separate gauntlet (**503Gs2** and
>   **503GM2**) in color beige
>
>                                  . . .
>
>   SIGVARIS Medical Therapy, Traditional Series Armsleeve (20-30
>   mmHg) with gauntlet (**901B11**) in sizes 1S, 2S, 1M, 2M, 1L, 2L in
>   color beige
>
>   SIGVARIS Medical Therapy, Traditional Series Armsleeve (30-40
>   mmHg) with gauntlet (**902B11**) in sizes 1S, 2S, 1M, 2M, 1L, 2L in
>   color beige
>
>   SIGVARIS Medical Therapy, Traditional Series Armsleeve (20-30
>   mmHg) without gauntlet (**901A11**) in sizes 1S, 2S, 1M, 2M, 1L,
>   2L in color beige
>
>   SIGVARIS Medical Therapy, Traditional Series Armsleeve (30-40
>   mmHg) without gauntlet (**902A11**) in sizes 1S, 2S, 1M, 2M, 1L,
>   2L in color beige
>
>   SIGVARIS Medical Therapy, Traditional Series Armsleeve (30-40
>   mmHg) with grip-top (**902A11**–size/S) in sizes 1S, 2S, 1M, 2M,
>   1L, 2L in color beige

See id. at 3–4 (emphases added).  The remainder of the memorandum set forth the reasons in support of classifying these models of compression products under HTSUS subheading 9817.00.96.

### C. Jurisdiction Over Plaintiff's Classification Claims

Plaintiff's complaint states that it seeks "judicial review of CBP's denial of Plaintiff's protests concerning the classification . . . of certain graduated compression accessories." Compl. ¶ 1.  The complaint alleges that the merchandise in this action "consists of two principal classes of graduated compression accessories: (a) hosiery; and (b) sleeves, worn on the arms, and gauntlets, worn on the hands." Compl. ¶ 5.  Plaintiff's primary claim is that the subject graduated compression hosiery, arm-sleeves, and gauntlets are properly classified under HTSUS subheading 9817.00.96.  See Compl. ¶¶ 39–66.  The complaint does not define, however, the entire universe of product models captured by the references to "subject graduated compression hosiery" and "subject graduated compression sleeves and gauntlets." Id.  Plaintiff's subsequent filings with the court clarify that "subject graduated compression hosiery" refers to Series 120, 145, 180, 185, 400, 500, and 900 models of hosiery and that "subject graduated compression sleeves and gauntlets" refer to Series 500 and 900 arm-sleeves and gauntlets.  See Compl. ¶¶ 7, 22; Pl. Facts ¶ 5; Pl. Facts Resp. ¶ 8; Pl. Letter 1–4.

As explained below, the court finds that § 1581(a) does not provide the court with subject matter jurisdiction to hear Plaintiff's classification claim insofar as it includes Series 180, 400, 500, and 900 graduated compression hosiery, and that Plaintiff waived its classification claim with respect to Series 900 arm-sleeves and gauntlets during the course of this action.

Court No. 11-00532                                                                                                    Page 13

### a. Graduated Compression Hosiery

The court does not have jurisdiction pursuant to 28 U.S.C. § 1581(a) to rule on the classification of Series 180, 400, 500, and 900 graduated compression hosiery. Plaintiff submits that it protested Customs' classification of Series 120, 145, 180, 185, 400, 500, and 900 models of graduated compression hosiery. See Pl. Reply 1–8. Upon reviewing the protests and supporting memoranda submitted by Plaintiff, it is clear that Plaintiff only protested certain models of graduated compression hosiery, which did not include Series 180, 400, 500, and 900 hosiery. See Suppl. Memo 2–3 (itemizing the hosiery products subject to protest). Plaintiff also made it clear that the protests only concerned compression hosiery that applies 15–20 mmHg of compression, but Plaintiff represents that Series 400, 500, and 900 hosiery apply greater than 20 mmHg of compression. See id. at 1 ("protests the decision of the Port Director of Customs to classify imported compression hosiery, having a compression of between 15 and 20 millimeters of mercury (mmHg)"), 5 ("this protest focuses on hosiery having a compression range of between 15–20 mmHg"), 6 ("[a]t issue is the classification of the subject merchandise in the 15–20 mmHg range"). Plaintiff's complaint acknowledges that "[h]osiery having higher compression (20 mmHg or more) . . . are not involved." Compl. ¶ 19. Plaintiff's motion for summary judgment nevertheless attempts to claim that Customs misclassified hosiery that applies compression of 20 mmHg or greater. See Pl. Br. 21–24.

A review of the protest documentation confirms that Plaintiff sufficiently challenged Customs' classification of Series 120, 145, and 185 graduated compression hosiery, but failed to challenge the classification of Series 180, 400, 500, and 900 hosiery models. Because of this jurisdictional failure, Customs' classification of Series 180, 400, 500, and 900 hosiery became

final and conclusive.  See 19 U.S.C. § 1514(a).  The court does not have jurisdiction, therefore, over Plaintiff's claim concerning the classification of the models of graduated compression hosiery in Series 180, 400, 500, and 900.

      Plaintiff argues that denying jurisdiction "'is a severe action which should be taken only sparingly.'"  Pl. Reply 5 (quoting XL Specialty Ins. Co. v. United States, 21 CIT 858, 867 (2004)).  Congress has expressly limited the court's jurisdiction to the issues preserved for appeal in a protest that is subsequently denied, and the court's jurisdiction is confined to the objections made in such a protest.  Plaintiff itemized each model of merchandise it wished to protest, yet failed to challenge the classification of Series 180, 400, 500, and 900 graduated compression hosiery.  Plaintiff was required to make such a challenge at the time of its initial protests to preserve its right to appeal.  See Computime, Inc. v. United States, 8 CIT 259, 261, 601 F. Supp. 1029, 1030 (1984) ("If plaintiff could have made such protests at that time, it was required to make them."), aff'd 772 F.2d 874 (Fed. Cir. 1985).  Plaintiff does not provide any reason for why it could not have challenged Customs' classification of these models of graduated compression hosiery at the time of its original protests.  The court recognizes that dismissal for lack of jurisdiction is a severe consequence.  "[H]owever, the [jurisdictional] requirements are straightforward and not difficult to satisfy."  Koike Aronson, Inc. v. United States, 165 F.3d 906, 909 (Fed. Cir. 1999).

      Defendant asserts that the court cannot exercise jurisdiction over an additional aspect of Plaintiff's classification claim in this action.  Plaintiff claims that the imported models of graduated compression hosiery are properly classified under HTSUS subheading 9817.00.96, which encompasses hosiery that was classified by Customs under HTSUS subheading

6115.10.05 and 6115.10.40.  Defendant questions the court's jurisdiction over this claim to the extent that it includes hosiery classified under HTSUS subheading 6115.10.05.  Defendant argues that this aspect of Plaintiff's claim does not present a justiciable controversy given that HTSUS subheading 6115.10.05 and 9817.00.96 are both duty free provisions.  See Def. Br. 2 n.3; Def. Resp. 5–6.  Under Article III of the Constitution, the Court is only empowered to decide claims that present live cases or controversies.  See U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 395 (1988); Flast v. Cohen, 392 U.S. 83, 94 (1968).  Generally, a classification dispute concerning two tariff provisions with the same duty rate is a moot issue and does not constitute a justiciable controversy because there is no monetary harm or injury resulting from Customs' classification.  See 3V, Inc. v. United States, 23 CIT 1047, 1048–1052, 83 F. Supp. 2d 1351, 1352–55 (1999) (dismissing an action for failing to meet the Article III case or controversy requirement because the two putative classification provisions carried the same duty rate).  The fact that the competing tariff provisions in this case are duty free does not render Plaintiff's claim moot here.  Plaintiff's claim presents a justiciable controversy because, unlike HTSUS subheading 6115.10.05, merchandise classified under HTSUS subheading 9817.00.96 is exempt from certain merchandise processing fees.  See 19 C.F.R. § 24.23(c)(1)(i).  Merchandise classified under HTSUS subheading 6115.10.05 is not afforded such treatment.[11]  The government would be required to refund the assessed merchandise processing fees if Plaintiff were to prevail on this claim.  Because Plaintiff's claim alleges monetary harm resulting from Customs' classification, the Article III case or controversy requirement is satisfied.

---

[11] The entry papers indicate that merchandise classified under HTSUS subheading 6115.10.05 was subject to a 0.21% ad valorem merchandise processing fee.  See Entries.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) over Plaintiff's classification claim regarding Series 120, 145, and 185 models of graduated compression hosiery that were classified under HTSUS subheadings 6115.10.05 and 6115.10.40.

### b. Graduated Compression Arm-Sleeves and Gauntlets

Plaintiff established the basis for the court's jurisdiction pursuant to 28 U.S.C. § 1581(a) by protesting Customs' classification of Series 500 and 900 arm-sleeves and gauntlets. The depositions conducted during discovery, Plaintiff's responses to Defendant's interrogatories, and Plaintiff's motion for summary judgment demonstrate, however, that Plaintiff has waived its classification claim with respect to Series 900 arm-sleeves and gauntlets.

While initial pleadings are designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), it is the information obtained during discovery that reveals the true nature of the claims and fills in the details of the dispute. See Hickman v. Taylor, 329 U.S. 495, 500–01 (1947) (discussing the interplay between pleadings and the pre-trial discovery tools under Rules 26 to 37); see also United States v. Procter & Gamble Co., 356 U.S. 677, 682–83 (1958). The third count in Plaintiff's complaint can be construed to include a claim regarding the classification of both Series 500 and 900 arm-sleeves and gauntlets.[12] There is no reference to Series 900 arm-sleeves and gauntlets in the three depositions conducted during discovery. See Def.'s Cross-Mot. Summ. J. Ex. C–E, Mar. 10,

---

[12] The third count in Plaintiff's complaint alleges that it is entitled to relief because "[t]he subject graduated compression sleeves and gauntlets" are properly classified under HTSUS subheading 9817.00.96. Compl. ¶¶ 53–66.

2016, ECF Nos. 61-3–5.  Plaintiff was asked to clarify through written discovery which models of arm-sleeves and gauntlets were subject to this action:

(a) Please correlate, precisely and specifically, each and every invoice description of the goods in issue with the catalog description of each such article, as that article was sold in the United States during the time of the entries in issue in this case.

Pl.'s First Set of Discovery Responses to Def. 12, Mar. 10, 2016, ECF No. 61–1 ("Pl. Interrogatory Resps.").  Plaintiff provided the following response:

| Invoice Description | Catalog Description |
|---|---|
| 503 CL.2 ARMSLEEVE WO.MITTEN A ... | Natural Rubber Armsleeve, without gauntlet |
| 503 CL.2 ARMSLEEVE W. MITTEN B ... | Natural Rubber Armsleeve, with gauntlet |
| MITTEN G ... | Natural Rubber Armsleeve, separate gauntlet |

Pl. Interrogatory Resps. 12–13.  Plaintiff was asked to "produce each and every document, catalog, brochure and/or specification that relates to your response to subpart (a), above."  See Pl. Interrogatory Resps. 13.  Plaintiff responded by referring to the page in its catalogue that provides product information for Series 500 arm-sleeves and gauntlets.  See id.  Notably absent from Plaintiff's interrogatory responses are any references to models of Series 900 arm-sleeves and gauntlets.  The court must presume that Plaintiff's answers to Defendant's interrogatories were complete.  See Hickman, 329 U.S. at 509.  By failing to include Series 900 arm-sleeves and gauntlets in the depositions and interrogatory responses, the court must conclude that Plaintiff waived its claim with respect to such merchandise.

The absence of any reference to Series 900 arm-sleeves and gauntlets in Plaintiff's submissions in connection with its motion for summary judgment also supports that Plaintiff

waived its classification claim regarding such models of arm-sleeves and gauntlets. It is "well established that arguments not raised in the opening brief are waived." SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319 (Fed. Cir. 2006) (citing Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1320–21 n.3 (Fed. Cir. 2005); see also Novosteel SA v. United States, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002). In its USCIT Rule 56.3 statement of facts, Plaintiff states that the merchandise subject to this action "include[s] Series 120, 145, 180, and 185 in compression hosiery, and Series 500 arm compression sleeves." Pl. Facts ¶ 5. Plaintiff's motion for summary judgment does not refer to specific models of graduated compression arm-sleeves and gauntlets. Nothing in Plaintiff's statement of facts or opening brief evinces that Customs' classification of Series 900 arm-sleeves and gauntlets is at issue. The only direct references to Series 900 arm-sleeves and gauntlets in this action are found in documents submitted after Plaintiff filed its opening brief. See Pl. Facts Resp. ¶ 8; Pl. Letter 2; Pl. Reply 4. The court concludes that Plaintiff's failure to include Series 900 arm-sleeves and gauntlets in its motion, pleadings, and discovery responses constituted a waiver of its classification claim for those models of merchandise.

## CONCLUSION

For the foregoing reasons, (1) the court lacks subject matter jurisdiction over Plaintiff's claim concerning the classification of Series 180, 400, 500, and 900 graduated compression hosiery, and (2) Plaintiff has waived its claim with respect to the classification of Series 900 arm-sleeves and gauntlets. Plaintiff's classification claims regarding these models of merchandise are dismissed. The graduated compression products that remain subject to this

action are Series 120, 145, and 185 models of graduated compression hosiery and Series 500 arm-sleeves and gauntlets.

Judgment on the dismissed classification claims will be entered accordingly.

					/s/  Jennifer Choe-Groves
					Jennifer Choe-Groves, Judge

Dated:  February 28, 2017
	    New York, New York